By the Court.—Curtis, Ch. J.
The barque “Trait d’Union” was, previous to June, 1870, an armed vessel belonging to the Haytian government. About June, 1870, she was purchased from that government for her subsequent owners, by William H. Ballon, who has for several years past been her master. *28 This witness testified, that at the time of the collision, the plaintiff was the owner of the vessel; and that he lived at Port an. Prince, Hayti; that he appears on the register as owner; and that the legal title is in the plaintiff.
It was shown that on August 4, 1870, the vessel was mortgaged by the plaintiff to Ballon, to secure £3,000, and on the same day, Ballon assigned the mortgage to Oliver Cutts & Co., of Port au Prince, to secure £2,500. Both in the mortgage and assignment, it is recited, that the vessel is the property of the plaintiff, “as per register.” Under these documents, the possession of the vessel passed from the plaintiff to Oliver Cutts & Co. prior to September, 1870. The latter, in September, 1870, by letters of attorney, authorized Robert Murray, Jr., of New York, to act as general agent of the vessel, and to sell and deliver her. Murray and Ballon testified, that, previous to the collision, they each acquired an interest in the profits of the vessel, amounting respectively to about one-half each. They were in actual possession of the vessel at the time of the collision, and entitled to the profits she would have earned but for the collision.
The plaintiff was the owner, and in possession of the vessel prior to the mortgage to Ballon. The execution of that mortgage, and the taking possession of the vessel under it, by the assignees of the mortgage, Oliver Cutts & Co., are the only circumstances shown, that affect the rights of the plaintiff to the vessel. There has been no foreclosure of this mortgage. The plaintiff has a right to tender the amount due upon the mortgage, and redeem his vessel, or if the vessel has earned enough to satisfy the mortgage, while in the possession of the mortgagee or his assignees, he has a right to compel them to account to him, and to redeem the vessel. It was his right to mortgage his vessel to his creditor to secure an indebtedness, and it was equally *29 his right to place that vessel in his creditor’s possession, until the use and profits of it should extinguish that indebtedness. All this the plaintiff could do, without parting with the whole beneficial interest in the vessel. The improbability that the mortgage would be paid, either by the plaintiff, or by the profits of the vessel, and the lapse of four years between the execution of the mortgage and the collision, without any effort to redeem or to compel an accounting by the plaintiff, are not in themselves circumstances that divest him of his legal rights to redeem this vessel.
The defendants in their points state, that the plaintiff’s name was kept in the register, simply to secure the benefits of a British registry for a vessel practically belonging to other than British subjects; and that this is a common device. While such a practice may invite the attention of a political economist, or in a proper case call for the action of a court, yet the evidence in the case before us does not disclose facts sustaining the defendant’s claim.
Though at the time of the collision, the profits of the vessel did not belong to the plaintiff, and he was not in possession of her, yet he had rights that entitled him to sue for damages for an injury to the vessel. If Oliver Cutts & Co., as assignees of the mortgage, or if Ballon or Murray, having interests under, or acting for them, have any equities to protect, it is apparent that they have notice of .the plaintiff’s suit and are promoting it, and, it is to be presumed, consider themselves duly protected. It is not for the trespasser to avoid his liability for the damage he has inflicted, by setting these up in their behalf.
The next question for consideration is whether the referee has erred in ascertaining the amount of damage to the vessel from the collision.
The referee found that the expense of repairing the damage to'the vessel was §3,877.77.
*30 Bucknam & Co.’s bill as shipwrights and caulkers was . . . $4,122.78
Wm. Cochran’s bill as rigger was . 4.30
J ames Mahon’s bill as plumber, was 7.92
Robert S. Place’s bill as shipsmith was ...... 165.37
John J. Coger, bill as ship joiner was ...... 199.20
$4,499.57
In addition to the above bills for repairs, there were others presented by the plaintiff, and claimed, making in all $7,462.85.
The referee found that the vessel was not strained all over, and that the re-fastening and re-metaling her was unnecessary, and also that the recaulking her all over was unnecessary. He appears to have rejected from consideration all the bills except the five above described, amounting to $4,499.57.
Prom these latter he apparently rejected the cost of replacing timbers and planks that were decayed . $215.80
Also the expense of watching metal 6.00
And also the expense of the work he considered unnecessary, for re-caulking, remetaling and ref asteningher, . . . . . 400.00
$621.90
Subtracting these deductions from the amount of the five bills, leaves the amount found for repairing the damages, $3,877.77.
The performance of the work, and the supply of the materials, charged for in these five bills, is proved by various witnesses. They are testified to, as just and reasonable, and, with the exceptions above stated, *31 are shown to be proper and necessary to make the vessel as good as she was before the collision.
In addition to the $3,877.77 the referee finds, that the value of the use of the vessel was $35 a day, or for the period of twenty-one days, while she was detained undergoing repairs, $735. The evidence is sufficient to sustain him in finding a larger amount than that, and it is an item in the amount of the damages caused by the collision.
There was some conflict in the estimates by the witnesses of the amount of damage, and there was testimony tending to show that the extent of the injury was not apparent until the vessel was stripped and on the dock. Ho sufficient reason is shown to lead to the conclusion that the referee has in any degree over-estimated the damage.
There were some exceptions taken at the trial in regard to the admission of evidence, but none that appear material.
The referee found, under an order of the court, that the expense of caulking the bottom and furnishing materials, and stripping off and putting on metal, was $400, and that other than this, he found no evidence enabling him to specifically detail the several items making up this amount. To this the defendant excepts. It has been held that no exception lies to the refusal of a referee to find the particulars which go to make up his general conclusions of fact (Avery v. Foley, 4 Hun, 415). If the defendant had wished the referee to find, specially, the several items making up this amount, he should have put it in the power of the referee to do so, by showing it, either upon the examination of the witness Kosevelt, who testified to estimating the number of sheets of copper originally on the vessel, and the difference between new and old as affecting the price, and also as to the other items in the rejected amount he valued, or in some other way.
*32 The judgment appealed from should be affirmed with costs.
Speir, J., concurred.